UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
THERESA LAYLOCK,

                Plaintiff,

      - against -

NEW YORK CITY ADMINISTRATION FOR
CHILDREN'S SERVICES and ROBYN
THOMPSON, in her individual and official
capacities,

                Defendants.
------------------------------------------------------------ x

**MEMORANDUM & ORDER**

09 CV 4483 (RJD) (LB)

DEARIE, District Judge.

This case is essentially another workplace dispute between an employee and her supervisors. Theresa Laylock alleges that ACS retaliated against her after she complained that the head of the Queens field office, Ed Thompson, promoted employees based on favoritism. According to plaintiff, Ed Thompson preferred to promote ACS employees that he had enrolled in Audrey Cohen College, where he also taught night classes. Laylock traces her problems back to 2002, when she enrolled in Audrey Cohen College independently. Two years later, in March 2004, Laylock complained to the New York Conflict of Interest Board. Laylock alleges that her supervisors retaliated by transferring her and preventing her from taking time off to attend class.

Five years later, on October 20, 2009, Laylock brought this action asserting a First Amendment retaliation claim and related state law claims against ACS and one of her supervisors, Robyn Thompson (no relation to Edward). Defendants move for summary judgment on the grounds that plaintiff's speech is not entitled to First Amendment protection, and that the only timely retaliation claims that plaintiff alleges are in any event too inconsequential to be actionable. Plaintiff cross-moves to amend her complaint by replacing

defendant ACS with the City. For the reasons below, the Court grants defendants' motion for summary judgment. The Court denies plaintiff's cross-motion because amendment would be futile.

The parties do not dispute the following facts, except where noted.

Laylock has worked for the City for the past twenty-two years. Her problems began around 2002, when she registered for a Masters of Public Administration program at Audrey Cohen College (later renamed "Metropolitan College"). At that time, Edward Thompson was the director of ACS's Queens field office and also an adjunct professor at Audrey Cohen. Plaintiff believes that she irritated ACS higher-ups by enrolling independently of Thompson. As evidence, Laylock points to her supervisor Robyn Thompson's denial of Laylock's request to attend training sessions in 2002 and 2003. Laylock also alleges that she was prevented from disciplining a subordinate who had previously threatened her.

Based on her belief that E. Thompson improperly promoted ACS employees who had enrolled at Audrey Cohen through him, plaintiff filed a complaint with the City Conflict of Interest Board in March 2004. (Unbeknownst to plaintiff, the board had cleared E. Thompson's adjunct professorship in 2002.) That fall, plaintiff was transferred to a different unit and moved to a new desk that she considers inferior. In December, plaintiff filed a complaint with the New York State Division of Human Rights and the Equal Employment Opportunity Commission alleging that ACS retaliated against her for contacting the Conflict of Interest Board. Two years later, in December 2006, plaintiff amended that complaint merely to add: "I am Black, [and] my husband is Nigerian." The papers in the present case do not address the outcome of plaintiff's EEOC complaint, nor does plaintiff allege a Title VII violation in this lawsuit.

2

Until R. Thompson stopped supervising plaintiff in January 2007, Laylock alleges that she was ostracized, denied training opportunities, and relieved of certain responsibilities. February 2007 to January 2009 were better years for plaintiff, but when R. Thompson resumed supervising Laylock in early 2009, plaintiff alleges that she again became the victim of retaliation. Plaintiff's responsibilities did not change,[1] but Laylock alleges that her supervisors retaliated against her by refusing to grant her two to three days off per week to do field placement work towards an education degree. How R. Thompson thwarted plaintiff is unclear; Thompson approved plaintiff's leave request form but allegedly made some negative comments about Laylock's request. Lori Levine, then-director of the Queens field office, refused to approve Laylock's leave request, explaining that it did not relate to Laylock's work at ACS, and plaintiff was unable to keep up with her assigned duties.[2] Around the same time, Levine reprimanded plaintiff for accumulating a backlog of homemaking and home attendant cases. Levine told plaintiff her tardiness cost the agency a great deal of money. In July 2009, R. Thompson instructed plaintiff to increase the frequency of her progress reports from monthly to weekly and to change her filing system. According to plaintiff, R. Thompson also sent an email commending one of Laylock's subordinates, a move that plaintiff interpreted as undermining Laylock's authority, since Laylock did not get along with that employee.

Facing 2010 budget cuts, ACS laid off a number of employees in late 2009 and allowed those with seniority to "bump" more junior workers directly in line below them. Aff. C. Wynter

---

[1] Although plaintiff alleged in her complaint that she was assigned a workload for six people after R. Thompson returned (¶ 21), in her Rule 51 counter statement, Laylock admitted that her responsibilities did not, in fact, change (¶ 33).

[2] Plaintiff objects that defendants' support for this fact, an email from Levine, is inadmissible hearsay and should be "stricken." Counter at ¶ 41. But plaintiff does not argue that defendants would be unable to offer admissible evidence through Levine's testimony, at trial. Rule 56 allows objection where "material cited to support . . . a fact cannot be presented in a form that would be admissible." Therefore, plaintiff's request to strike is denied.

¶¶ 5-9. ACS laid off its Child Welfare Specialist Supervisor I's, including Laylock, but because of plaintiff's seniority, she was allowed to "bump" a junior employee and assume the title directly below Supervisor I. Id. at ¶¶ 10-13. In October 2009, plaintiff was transferred from the Queens field office to the transportation division; that same month she began this action alleging unlawful retaliation for reporting what she regarded as E. Thompson's cronyism.

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material facts and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once defendants show that the material facts are undisputed, the burden shifts to plaintiff to produce "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (emphasis original) (quoting Rule 56). The Court draws reasonable inferences in the non-movant's favor. Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d. Cir. 2004) (internal citation omitted).

To state a First Amendment claim of unlawful retaliation, a public employee must show that (1) her speech was protected by the First Amendment; (2) she suffered an adverse employment action sufficient to deter a similarly situated person from exercising her constitutional rights; and (3) her speech substantially motivated the adverse action. See Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225-26 (2d Cir. 2006); Ruotolo v. City of New York, 514 F.3d 184, 188-89 (2d Cir. 2008) (internal citations and quotation marks omitted). Laylock must establish a prima facie case by "adduc[ing] sufficient evidence to warrant a trial." Finnegan v. Bd. of Educ. of Troy, 30 F.3d 273, 274 (2d Cir. 1994) (per curiam) (affirming summary judgment for defendant where plaintiff "presented only conclusory allegations and his own

4

opinion"). Summary judgment is warranted because Laylock has neither shown that her speech was protected nor that defendants retaliated against her.

Plaintiff offers no evidence to support her belief that E. Thompson somehow favored other employees, much less that the supposed practice was a matter of public concern. See Garcetti v. Ceballos, 547 U.S. 410, 417 (2006) ("First Amendment protects a public employee . . . speak[ing] as a citizen addressing matters of public concern"). Laylock's quarrel with E. Thompson was "more personal in nature and generally related to her own situation within [ACS]" than "a mission to protect the public welfare." Ezekwo v. New York City Health & Hosps. Corp., 940 F.2d 775, 781 (2d Cir. 1991). See also Ruotolo, 514 F.3d at 190 (no First Amendment protection where suit "concern[ed] essentially personal grievances" and plaintiff, like Laylock, sought damages relief "for himself alone"). Cf. Frank v. Relin, 1 F.3d 1317, 1329 (2d Cir. 1993) (district attorney's compliance with Brady obligation matter of public concern).

Even were plaintiff able to show that her speech was protected under the First Amendment, her retaliation claim would fail because she has not shown that defendants took any sufficiently adverse action against her. First, plaintiff's claims accruing prior to October 20, 2006 cannot support an independent basis for relief because they are barred by the statute of limitations. See N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d). Defendants' only non-barred acts follow: (1) denying Laylock leave to do field placement work for an education degree unrelated to her job; (2) requiring Laylock to write weekly, rather than monthly, reports and to change her filing system; and (3) undermining plaintiff by praising a subordinate that she considered deficient.[3] See Plf. Opp. at 14-15; Counter ¶¶ 39-43. Adverse action under the First

---

[3] Plaintiff raises a new basis for retaliation in her opposition brief: that she was "demoted" in October 2009 and transferred to the transportation unit while some of her co-workers kept their jobs or were promoted. Plf. Opp. at 4. During her December 9, 2010 deposition, however, Laylock refused to answer defense counsel's questions about her

5

Amendment is "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . her constitutional rights." Zelnik, 464 F.3d at 225-26 (internal citations and quotation marks omitted). None of defendants' actions comes close to constituting an adverse action that would deter someone in Laylock's shoes from exposing E. Thompson's alleged cronyism. See Wrobel v. Erie, 2012 WL 3104529, at *8 (2d Cir. Aug. 1, 2012) ( "de minimus slights and insults do not amount to retaliation") (emphasis original).

Laylock does not raise any fact issue preventing summary judgment on her retaliation claims under the SHRL and CHRL. Retaliation claims under the CHRL and SHRL both require that plaintiff state a prima facie case of discrimination, including identifying a retaliatory adverse action taken by defendant. See Alvarado v. Metro. Transp. Auth., 2012 WL 1132143, at *6, 13 (S.D.N.Y. Mar. 30, 2012) (Batts, J). Although the CHRL standard for "adverse action" is more lenient than the standard under the First Amendment or the SHRL, plaintiff's allegations still fall short. Compare Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 723 (2d Cir. 2010) (CHRL adverse action is one "reasonably likely to deter a person from engaging in a protected activity") (quoting Williams v. New York City Hous. Auth., 872 N.Y.S. 2d 27, 34 (N.Y. App. Div. 2009)) with Hicks v. Baines, 593 F.3d 159, 167-69 (2d Cir. 2010) (SHRL adverse action is one that "would deter a similarly situated individual of ordinary firmness" from reporting discrimination) (internal citation and quotation marks omitted). Denying Laylock leave time for non-work related classes, requiring her to switch from monthly to weekly progress reports and to change her filing system, and praising her subordinate are the kinds of "petty slights [and] . . . minor annoyances" unlikely to deter an employee from reporting discrimination. Alvarado, 2012

---

allegedly similarly situated co-workers, and plaintiff's counsel stipulated that "if [Laylock] decide[s] that she does not want to divulge that individual's name, we'll drop that claim as a potential adverse action." Defs. Mot., Ex. B, Laylock Dep. 224:4-225:18. Having decided to keep mum and stipulated to waiving this basis for retaliation, plaintiff cannot raise it now to defeat summary judgment.

WL 1132143, at *13 (quoting Millea v. Metro-North R.R. Co., 658 F. 3d 154, 165 (2d Cir. 2011)). Plaintiff's alleged adverse actions fail the lenient CHRL standard; they necessarily then fail the more stringent SHRL standard.

Further, plaintiff has not presented any evidence to rebut defendants' showing that they denied her leave time and required her to change her work habits because she had fallen woefully behind. "To prevail on their summary judgment motion, defendants [have] to demonstrate[,] . . . having offered legitimate, nondiscriminatory reasons for their challenged actions, the absence of a material fact as to whether their explanations were pretextual." Bendeck v. NYU Hosps. Ctr., 909 N.Y.S. 2d 439, 441 (N.Y. App. Div. 2010) (internal citation omitted) (reversing summary judgment denial where "depositions, affidavits and documents" showed reasons to fire plaintiff for poor performance). Laylock does not respond to defendants' exhibits and affidavits, which characterize her as a troublesome employee whose tardiness cost the agency millions of dollars. See Defs. Mot., Ex. P (Levine explaining her denial of Laylock's leave request: "At the time when Ms[.] Laylock's request came to me, over 75 per cent [sic] of homemaking recertifications were expired—a completely unacceptable number that costs the agency millions of dollars a year. Ms[.] Laylock's absence two days a week would clearly adversely affect her ability to do her job."); id., Ex. L (E. Thompson: plaintiff is "a difficult employee, who frequently criticizes her colleagues and claims that they are out to get her."); id. (R. Thompson: plaintiff is "a very disgruntled employee"). Defendants' adjustments to Laylock's work routine appear fully justified by the available evidence, and plaintiff does not advance any evidence, beyond her belief, that the actions of her employer were in any sense pretextual or uncalled for. Therefore, the Court grants defendants' motion for summary judgment on plaintiff's state law retaliation claims.

7

Plaintiff alleges no evidence to support her Monell claim. Summary judgment for defendant is granted on the municipal liability claim.

For the forgoing reasons, the Court grants defendants' motion for summary judgment and denies plaintiff's cross-motion to amend the complaint. The Clerk of Court is ordered to enter judgment accordingly.

SO ORDERED.

Dated: Brooklyn, New York
      September 2̸0̸, 2012

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge